## PUIGDOLLERS v. MONROIG.

## APPEAL from the District Court of San Juan.

No. 131.—Decided March 24, 1908.

APPEAL—TRANSCRIPT OF RECORD.—Where the transcript of the record filed on appeal does not contain any one of the documents mentioned in section 299 in connection with section 233 of the Code of Civil Procedure, the appeal must be dismissed.

ID.—CASES IN WHICH BOTH PARTIES APPEAL.—Where both parties take an appeal, neither one may base the ·same on the facts contained in the transcript of the record filed by the other, in the absence of a stipulation to that effect.

ID.—DECISION CONTRARY TO THE EVIDENCE.—The question whether or not a decision is warranted by the evidence taken at the trial cannot be considered on appeal unless the appeal shall have been taken within 15 days after the rendition of judgment.

ARBITRATORS—CASES IN WHICH THEY EXCEED THE LIMITS OF THEIR JURISDICTION.—Where certain matters are submitted to arbitration, and the order of the court leaves room for doubt as to the scope and effects thereof, it should be construed in the sense most favorable to the jurisdiction of the court rather than to that of the arbitrators, and if such arbitrators should act upon certain points beyond the limits of their jurisdiction, it is not necessary to review the decision of the arbitrators by means of a new trial, but the same may be declared to be null and void in so far as those points are concerned, in the decision of which they have exceeded their jurisdiction, and accepted in so far as it conforms to the authority granted or conferred.

PARTNERSHIP—DETERMINATION OF PROFITS.—It is a well-known principle in regard to partnership contracts, whether civil or mercantile, that the profits accruing to each of the partners cannot be determined by liquidation until the date or the maturity thereof.

ID.—CONJUGAL PARTNERSHIP—GANANCIAL PROPERTY.—Where a divorce is decreed and the marriage dissolved, the conjugal partnership is terminated. Therefore, each spouse has a right to one-half of the net profits obtained during the existence of the marriage.

ID.—Upon liquidating the conjugal partnership the profits accruing to the husband in any civil or mercantile partnership of which he is a member during the existence of the marriage must appear in the liquidation and may, therefore, be determined without awaiting the termination of the period of duration of such partnership.

ID.—Under the foregoing doctrine a judgment requiring the husband to pay a certain amount as ganancial profits to his wife, from the profits accruing to him under a civil or mercantile partnership, is not an infraction of the provisions of section 1572 of the Civil Code in relation with ·sections 139 and 174 of the Code of Commerce, because the judgment does not order that such an amount be withdrawn from the profits obtained by the husband in such partnership, but that they be paid by him.

The facts are stated in the opinion.

*Mr. Juan Guzmán* for appellant.

*Mr. Mendoz Vaz* for respondent.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

Under date of November 14, 1905, Georgina Puigdollers Molina brought suit in the District Court of San Juan against Antonio Monroig Obrador, praying that he be adjudged to deliver to the plaintiff as ganancial property accumulated during their marriage which had been theretofore dissolved, the sum of $9,248.25, and that, in case he should contest the suit, whatever amount should appear to be due her, after a liquidation of such property to be made under the direction of the court, and that he be adjudged to pay all the costs.

Georgina Puigdollers set up, as the fundamental fact upon which her claim was based, the following:

"1. That, on November 6, 1904, she was united in marriage to Antonio Monroig Obrador, which marriage was dissolved at her instance by judgment rendered by the District Court of San Juan on September 28, 1905, entered the 6th of October folowing, and which became final on November 5 of the said year.

"2. That, at the time of their marriage, Monroig Obrador was a member of the agricultural and industrial firm operating in Bayamon under the firm name of "Antonio Monroig é Hijos,' constituted by public deed executed on February 26, 1903, for a term of five years, which commenced to run on February 1 of the said year and terminated December 31, 1908; that the spouses, Antonio Monroig Oliver and Josefa Obrador y Vilá and their children, Antonio, the defendant herein, and Valentín Monroig Obrador, were the members of the said firm, the purposes of which were the planting of canes, the manufacture of sugar therefrom, stock raising, purchase and sale of stock, the sale of milk, and other similar branches.

"3. That, by virtue of the said deed, the firm acquired the right of usufruct for a term of years in several rural properties and among these the Central 'Juanita,' which was contributed to the said firm by Antonio Monroig Oliver, together with its factories, buildings, machinery and equipment, the cattle thereto belonging, consisting of 747 head, and all of the cane plantation, not only on the properties owned by Monroig Oliver but also others held under leases consisting in all of 434.71 *cuerdas.*

"4. That it was agreed that from the proceeds of the milk six thousand ($6,000) dollars should be withdrawn annually and paid to Antonio Monroig Oliver, and that by reason of the death of the latter, to his widow, Josefa Obrador y Vilá as the representative of his estate, that amount not being considered as profits of the firm, the only profits from that source being the excess obtained over and above said amount; that it was further agreed that each of the members of the firm, Antonio and Valentín Monroig Obrador, should receive 10 per cent of the net profits, the remaining 80 per cent going to the other member, Antonio Monroig Oliver, and, by reason of his death to his estate, represented by his widow.

"5. That the firm, 'Antonio Monriog é Hijos,' was bound to deliver, upon its dissolution, to Antonio Monroig Oliver, all of the properties contributed by him thereto—that is to say the rural estates described in the partnership contract—together with everything thereon situated, all of the cattle, and 434.71 *cuerdas* of sugar-cane, and that such property should be returned in the same state or condition in which they were contributed to the said firm.

"6. That Antonio Monroig Oliver died on April 20, 1903, leaving a will executed February 23 of the same year, wherein he stated that his first and only marriage was to Josefa Obrador y Vilá and that he had, by such marriage, four children named Juan, Antonio, Valentín and María Monroig Obrador; that all of his property was ganancial property; that he left

no bequests and appointed as his sole and universal heirs, in equal shares, his four children above mentioned, and his wife as usufructary heir, in accordance with the provisions of section 834 of the Civil Code of Spain, of which country he was a citizen.

"7. That, during the year Georgina Puigdollers Molina was married to Antonio Monroig Oliver, the firm of 'Antonio Monroig é Hijos' did a business which, to the best of her information, and subject to the result of the evidence, produced a net profit of $19,381.50; that deducting from this amount $885 spent during the marriage, there remained a net profit to be divided between the spouses, amounting to $18,496.50— that is to say, $9,248.25 for each, which is the amount claimed by the plaintiff, reserving the right to any greater amount, if such be shown by the evidence to be due her."

Antonio Monroig, in answering the complaint, admitted the fact of his marriage to Georgina Puigdollers, which took place on November 6, 1904, the constitution of the firm of "Antonio Monroig é Hijos" by a deed of February 26, 1903, and the death of Antonio Monroig Oliver on April 28, 1903, and that he left a will executed February 23 of the said year and added, as fundamental facts, serving as a basis for his answer to the complaint, the following:

"1. That in the deed constituting the firm of "Antonio Monroig é Hijos,' to continue in existence for five years, and to terminate on December 31, 1908, it was stipulated that during the existence of the partnership, Antonio Monroig or his wife should receive for personal expenses, and the support of the family, at any time, or on any date, such amounts as might be necessary without any limitation whatsoever, such amount to be charged to his private account; while Antonio and Valentín Monroig Obrador were each permitted to withdraw for their personal expenses, to be charged to their private accounts, the sum of $25 per month only.

"2. That the basis of plaintiff's demand in determining the ganancial property is erroneous because admitting that the litigants were married on November 5, 1904, and that the only ganancial property was that obtained from the firm of 'Antonio Monroig é Hijos,' those facts must be accepted with all their consequences; and, as on the date mentioned, sugar cane in Porto Rico is ready to be harvested and manufactured into sugar, it is necessary to deduct from the profits the value of such plantation on November 6, 1904, which amounted to $45,-500 and to this amount must be added the value of the cattle produced or raised during the year of the marriage, which was only about 70 head, valued at $400, and that, during that year, Antonio Monroig expended $3,000 to defray the expenses of the conjugal partnership.

"3. That the will of Antonio Monroig Oliver must be harmonized with the provisions of the Civil Code in force in the year 1903, when he died, and thereafter, the provision of that article of said code, which provides that the widow shall have a right to the usufruct of one-third of the real estate left by her husband must be applied, and the interested parties agree in recognizing this right in their mother, Josefa Obrador.

"4. That the profits derived from the operation of the Central 'Juanita' during 1905 having amounted to only sixty thousand ($60,000) dollars from that sum must be deducted forty-five thousand ($45,000) dollars represented by the cane plantations existing upon the commencement of the conjugal partnership, there remaining, therefore, fourteen thousand five hundred ($14,500) dollars to be divided which, if divided in the manner agreed upon in the deed constituting the firm of 'Antonio Monroig é Hijos,' and the will of Monroig Oliver made to harmonize with the provisions of the Civil Code in force in 1903, Antonio Monroig Obrador is entitled to two thousand four hundred and sixteen dollars and seventy-six cents ($2,416.76), but, as the amount expended on account of the marriage amounts to three thousand dollars ($3,000), it is

seen that there is no ganancial property to be divided, and therefore the complaint should be dismissed with the costs against plaintiff.''

A date having been set for the hearing, after a part of the evidence had been taken on the 16th of April, 1906, the plaintiff filed a motion in which she invoked subdivisions one and two of section 205 of the Code of Civil Procedure, and prayed that, without prejudice to the taking of the balance of the evidence, arbitration be provided for by a board composed of three persons, one appointed for each party, and the third by the court for the purpose of determining the questions of fact relating to the product of the Central ''Juanita,'' the milk dairy, and the cattle raising carried on in connection therewith, from the 6th of November, 1904, to the 5th of November, 1905, and that, for this purpose, the accounts be examined, the proper liquidation be made, and that evidence be heard and conclusions reached within the period of 20 days.

Notwithstanding the opposition of the defendant, the court sustained the motion directing ''that the matter be submitted to arbitration, each of the parties to name an arbitrator, and the third to be appointed by the court to determine the products and profits of the operation of the Central 'Juanita,' the cattle raising, and milk dairy carried on in connection therewith, during the time between November 6, 1904, and November 5, 1905; the arbitrators appointed to be given 20 days counting from the date they were sworn in, for the examination of accounts, the hearing of the testimony of witnesses and any other evidence which might be necessary and, after the expiration of such period, that they should present to the court within 20 days following, their decision upon the facts submitted to them for determination.''

Ramon H. Patron, Alejandro Bozzo and Angel Rivera, having been designated as the arbitrators by the plaintiff, the defendant and the court, respectively, after having been duly sworn, the court ordered that, to aid them in the proper dis-

charge of their duty, the records and all the facts concerning the case be placed at their disposal and, for the same purpose, the plaintiff, with the approval of the defendant, furnish an authentic copy of the stenographic notes certified to by the stenographer of the court containing an accurate transcript of the proceedings had at the different sessions of the court during the trial of the case.

The arbitrators Patron and Bozzo, on June 2, 1906, submitted a majority report which was entered in the office of the secretary of the court on the 4th of the said month and year, which report contains the following conclusion:

"First. That the proceeds from the operation of the Central 'Juanita' amount to sixty-nine thousand five hundred and thirty-six dollars and eighty-three cents ($69,536.83), after deducting two thousand seven hundred and twenty-three dollars and thirteen cents ($2,723.13), credited to the sugar expert, M. Pardo.

"Second. That the proceeds from the milk dairy amount to one thousand and fifty-two dollars and sixty-two cents ($1,-052.62), after deducting six thousand dollars ($6,000), which, according to clause 9 of the partnership contract of 'Antonia Monroig é Hijos' are set apart for the maintenance of the family.

"Third. That the cattle raised possess a value of one thousand one hundred and fifty-two dollars ($1,152), which amount, added to the foregoing, produce a total of seventy-one thousand seven hundred and forty-one dollars and forty-five cents ($71,741.45).

"Fourth. From this total amount, there must be deducted the value of 2,000 bags of sugar from the previous grinding, weighing 5,000 *quintales* which, at three dollars and thirty cents ($3.30) per *quintal,* amount to sixteen thousand five hundred dollars ($16,500), and the value of the cane plantations existing at the central on November 6, 1904, which, according to the appraisement of experts, is forty thousand nine hun-

dred dollars ($40,900). These two amounts give a total of fifty-seven thousand four hundred dollars ($57,400).

"Fifth. Deducting the total of the sums last mentioned from the seventy-one thousand seven hundred and forty-one dollars and forty-five cents ($71,741.45), there remained fourteen thousand three hundred and forty-one dollars and forty-five cents ($14,341.45), which is the amount that the arbitrators record as the net profits obtained by 'Antonio Monroig é Hijos' from November 6, 1904, to November 5, 1905, from the sugar, milk, and cattle business.''

On August 9, 1906, counsel for the plaintiff filed a motion praying that the arbitrators be directed to deliver the records, calculations, reports and allegations of which they made use in the case, in order that the same be adjudged and made to form a part of the record and that the award of the board of arbitration be annulled because it was made by two only of those named without the intervention of a third arbitrator and because it is contrary to law, inasmuch as it is not confined to the question of facts submitted, and inasmuch as it contains conclusions which, far from being warranted by sufficient evidence, are contrary thereto.

The plaintiff alleges, in support of the foregoing motion, irreguralities in the arbitration proceedings, and in the decision of the board, as also insufficiency of the evidence to sup- citing section 211 and subdivision 1 of section 221 of the Code port the award, and that the said award is contrary to law, of Civil Procedure; and furthermore, that the said board disposed of matters of which they had no jurisdiction in deducting six thousand dollars ($6,000), from the milk account, and in fixing the value of the cane plantation on November 6, 1904, because those were questions of law to be decided by the court.

The counsel for defendant opposed the motion, denying the various facts therein alleged and alleging in support of the opposition that the procedure followed by the arbitrators was

perfectly valid and in accordance with article 352 of the Code of Civil Procedure; that the evidence taken supports the decision of the board of arbitration and that the plaintiff in asking for the annulment of the arbitration proceedings, has not followed the provisions of sections 216, 222, 223, 226 and 228 of the Code of Civil Procedure with respect either to time or form.

The court made an order on December 12, 1906, disposing of the motion, the pertinent part of which order reads as follows:

"Therefore the court decides to annul the report of the arbitrators, Ramón H. Patron and Alejandro Bozzo, with respect to the three amounts deducted, they not having been empowered to do so—that is to say, the sum of six thousand (6,000) dollars produced from the milk business, the sum of sixteen thousand five hundred (16,500) dollars, the value of 2,000 hags of sugar, and the sum of forty thousand nine hundred (40,900) dollars, the value of the plantations on November 6, 1904, without prejudice to the decision of the court in due time upon these questions; and consequently, the court annuls the said report in respect to the sums deducted, and leaves the same in force in respect to that part which affirms: (*a*) That the profits from the factory are sixty-nine thousand five hundred and thirty-six dollars and eighty-three cents ($69,536.83); (*b*) That the profits from the milk dairy amount to one thousand and fifty-two dollars and sixty-two cents ($1,-052.62), and in addition, the six thousand (6,000) dollars, deducted, in which particular the report is annulled, leaving a total of seven thousand and fifty-two dollars and sixty-two cents ($7,052.62); and (*c*) That the profits from the cattle business amount to one thousand one hundred and fifty-two dollars ($1,152), making a total of seventy-seven thousand seven hundred and forty-one dollars and forty-five cents ($77,741.45), with which modifications the court accepts the majority report of the arbitrators."

To this order or ruling both parties entered exceptions, and the case having been thereafter submitted to the decision of the court upon written brief, judgment was rendered on February 14, 1907, entered the 26th of the same month, decreeing that the plaintiff recover from the defendant the sum of $5,785.95, with the costs of the suit. This judgment does not appear in the transcript of the record filed by Georgina Puigdollers, but does appear in the transcript filed by Antonio Monroig Obrador.

The grounds upon which that judgment is based, which appears in the opinion of the court, are substantially as follows:

First. The profits from the operation of the ''Central Juanita,'' the milk dairy and cattle business, during the year of the marriage are fixed in three sums as follows: $69,536.83, $7,002.62, and $1,152, respectively, as accepted by the court in order of December 12, 1906, in anulling the report of the arbitrators in respect to the deductions which it had made, and leaving the same subsistent and in force in respect to the particulars mentioned, which three amounts make a total of seventy-seven thousand seven hundred and forty-one dollars and forty-five cents ($77,741.45).

Second. From the foregoing total of seventy-seven thousand seven hundred and forty-one dollars and forty-five cents ($77,741.45) there must be deducted the amount of six thousand (6,000) dollars, representing the profits from the milk dairy, to be distributed among the members of the succession of Antonio Monroig Oliver, a net profit therefore remaining of seventy-one thousand seven hundred and forty-one dollars and forty-five cents ($71,741.45), to the firm ''A. Monroig é Hijos.'' From the foregoing amount of seventy-one thousand seven hundred and forty-one dollars and forty-five cents ($71,741.45) no deduction should be made for the value of the 2,000 bags of sugar sold in 1905 during the year the marriage existed, because it has not been shown that such bags of sugar

belonged to the crop harvested during the first month of the year 1904, prior to the marriage.

Fourth. Nor can the forty thousand nine hundred (40,900) dollars employed in the planting and cultivation of the cane up to the time of the marriage be deducted from the seventy-one thousand seven hundred and forty-one dollars and forty-five cents ($71,741.45) because those canes were harvested during the year 1905, and articles 471, 472 and 1316 of the Civil Code must, therefore, be applied.

Fifth. The 80 per cent of the profits of the firm of "A. Monroig é Hijos" belonging to Antonio Monroig Oliver by reason of his death belong to his heirs, and must be divided in accordance with the provisions of section 822 of the Civil Code of Porto Rico, as it governed in the year 1902, because the predecessor, Monroig Oliver, died before the said section was amended and because the said divisible profits are derived from real estate in Porto Rico, in accordance with the provisions of sections 10 and 1292 of the Civil Code; and, therefore, one-half must go to the widow and the balance must be distributed, after deducting one-third thereof, between the four children in equal parts.

Sixth. From the profits represented by the sum of seventy-one thousand seven hundred and forty-one dollars and forty five cents ($71,741.45), taking as a basis the 10 per cent corresponding to the partners, Antonio and Valentín, each of them is entitled to the sum of seven thousand one hundred and seventy-four dollars and fourteen cents ($7,174.14) and the 80 per cent, represented by the sum of fifty-seven thousand three hundred and ninety-three dollars and seventeen cents ($57,-393.17), together with the six thousand (6,000) dollars deducted from the profits of the milk business, which two amounts make a total of sixty-three thousand three hundred and ninety-three dollars and seventeen cents ($63,393.17), belonging to the Estate of Antonio Monroig as follows:

To the widow, for her half, thirty-one thousand six hundred and ninety-six dollars and fifty-eight cents ($31,696.58);

to the widow, as her third of the other remaining half in usufruct, ten thousand five hundred and sixty-five dollars and fifty-two cents ($10,565.52); and the remaining two-thirds to the four heirs, each being entitled to $5,282.76, so that, to the amount of $7,174.14 which Antonio Monroig was entitled to receive during the existence of the marriage, as a partner in the firm of "A. Monroig é Hijos," there must be added $5,-282.76 which he is entitled to receive as one of the heirs, both of which sums amount to $12,456.90.

Seventh. As it has not been shown that the expenses incurred during the time the plaintiff and defendant lived together exceeded $885, that is the amount which must be deducted from the $12,456.90, a net profit thus resulting of $11,-571.90, which is the amount that must be divided equally between the spouses, and the plaintiff should, therefore, receive the sum of $5,785.95 due her from the defendant, and which is demandable immediately, it not being necessary to await the expiration of the period for the duration of which the firm of "A. Monroig é Hijos" was constituted.

Counsel for Georgina Puigdollers prayed the court, by a motion filed on February 23, to order the defendant to deposit in the office of the secretary, at the disposition thereof, the books of "Antonio Monroig é Hijos," which were used in evidence at the trial, in order that the necessary memoranda could be taken therefrom for the purpose of preparing the statement of the case, and the court granted the motion.

On March 15, 1907, the plaintiff filed a notice of appeal from the judgment rendered, and, under date of March 16, the defendant likewise filed his notice of appeal.

In his brief before this court, counsel for Georgina Puigdollers maintains: (1) That the deduction of $2,723.15 as salary of the sugar expert, M. Pardo, from the balance appearing from the account of the operation of the central on November 5, 1905, should be anulled and therefore the balance should be fixed exactly as it appears in the books of "A. Monroig é

Hijos'' in the sum of $72,259.98; (2) That there should be credited to the same account the sum of $8,900, which is the sum spent up to November 5, 1905, for the planting and gathering of the crop for 1906, and therefore the net profit which appeared on November 5, 1905, accordinig to the books, to be $72,259.98, should be increased by adding thereto the aforesaid amount which would make a total of $81,159.98; (3) That there should also be credited to the general account of net profits the sum of $3,475.51 as proceeds from the purchase and sale of cattle.

The plaintiff admits that the rules established by the judgment appealed from in respect to the manner and the proportion in which the profits should be distributed are proper and that a division of such profits in the manner decreed by the trial court, without any change whatever except as to the difference in the total amount of the profits, due to the addition thereto of the three items indicated, the conclusion is that the financial profits obtained during the existence of the marriage between the plaintiff and defendant amount to $14,973.35, which, after deducting the sum of $885, which represents the expenses of the conjugal partnership, a net profit remains to be divided between them, amounting to $14,088.35, the plaintiff being, therefore, entitled to $7,044.17, which should be paid her by the defendant.

Counsel for Antonio Monroig maintained the following points in his brief before this court:

1. That the court committed an error of law in sustaining the motion of the plaintiff to annul the report of the arbitrators presented at the trial.

2. That the court committed an error of law in failing to deduct from the profits accruing to the firm of ''A. Monroig é Hijos'' for the grinding season ending 1905, the value of the cane plantations on November 6, 1904.

3. That the court committed an error of law in failing to deduct from the profits of ''A. Monroig é Hijos'' for the year

ending 1905 the value of 2,000 bags of sugar remaining over from the year 1904, and which were sold together with the sugar manufactured in 1905.

4. That the court committed an error of law in finding that only $885 were expended by the conjugal partnership during the year of its legal existence.

5. That the court committed an error of law in ordering that the books of ''A. Monroig é Hijos'' be presented to the court after judgment had been rendered, in order that the plaintiff might prepare his statement of facts to be used on appeal.

6. That the court committed an error of law in holding that the $5,785, which the defendant was adjudged to pay, were immediately demandable, without taking into account that the duration of the firm of ''A. Monroig é Hijos'' must continue in existence until the 31st of December, 1908.

Counsel for Antonio Monroig, after making such allegations as he deemed proper, with respect to the questions raised, reached the conclusion that the order of the trial court of August 12, 1906, should be in all things annulled, and that the report of the board of arbitration should be left in force and that, upon the basis of said report, the ganancial profits due the plaintiff is determined. He maintains that Antonio Monroig Obrador is entitled to receive as profits from the firm of ''Antonio Monroig é Hijos,'' from November 6, 1904, to November 5, 1905, $1,434.14, and as heirs of Antonio Monroig Oliver, $956.09, which two items make a total of $2,390.23; and, as the expenses incurred during the existence of the marriage amounted to $3,000, there are no profits to be divided, as was maintained in the answer to the complaint.

The attorney for Antonio Monroig, in addition to contesting the appeal of Georgina Puigdollers on its merits, maintained that it should be dismissed by reason of the fact that she failed to comply with the provisions of section 299, in relation with section 233 of the Code of Civil Procedure, and

both parties have filed briefs drawing attention to the defects of both appeals, which require the application of paragraph two of subdivision one of section 295 of the said code.

We shall first consider these questions and will thereafter take up and consider the case on its merits.

In the record filed in this court by counsel for appellant, Georgina Puigdollers, we find the opinion and decision of the trial judge upon the matters in litigation, said opinion and decision bearing date of February 14, 1907, wherein the secretary is directed to enter judgment in accordance with the said opinion and decision. The judgment entered in compliance with this order does not appear in the record, and, as it forms a part of the judgment roll, according to the provisions of section 233 of the Code of Civil Procedure, and as section 299 of the said code provides that, on an appeal from a final judgment, the appellant must file with the court, among other documents, a copy of the judgment roll, it is clearly seen that we cannot consider and decide plaintiff's appeal on account of the absence of the douments necessary for that purpose, and the same should be dismissed in accordance with provisions of section 303 of the Code of Civil Procedure above cited.

This doctrine has already been announced by this court in the case of *Heraclio Jiménez* v. *José Olmedo et al.,* 13 P. R. Rep., p. 296 and *Manuel, Rafael y Amando López Landrón* v. *The Agricultural Partnership of Rubert Hermanos,* (*ante* p. 5) decided, respectively, on December 13, 1907, and January 28 of the present year.

It is not sufficient to allege that in the record filed by the other appellant—that is to say, Antonio Monroig Obrador—a copy of the judgment rendered on the same date on which the opinion and decision were pronounced, or in other words, on February 14, 1907, with a memorandum showing that it was entered February 26 of the same year, as of the date of the 15th of the same month, on which it should have been en-

tered, is found in the record, because the Supreme Court of California, in the case of *Gates* v. *Walker,* 35 Cal., 289, held that where one of the parties to an action takes an appeal and another party to the same action likewise appeals, neither of the parties can refer to matters of fact appearing in the transcript of the record filed by the other appellant in the appellate court, unless there is a stipulation to this effect between the parties.

With respect to the effects of paragraph two of subdivision one, of section 295 of the Code of Civil Procedure upon both appeals, and we refer to that of Georgina Puigdollers, in case it should not be dismissed on the grounds above set forth, we must first note that paragraph two aforesaid provides that exception to a decision or verdict of the jury, based on the ground that it is contrary to the evidence, cannot be reviewed on appeal from the judgment, unless the appeal is taken within 15 days after the judgment is rendered, and above all, it appears that, according to the American legal technicality, the word "decision" means the judicial determination of a competent court and "verdict" is the decision of the jury; and therefore it cannot be maintained that the said legal provision refers to the decision or verdict of a jury, as if both terms were synonymous. It refers to the decision of a court or to the verdict of a jury because it mentions the terms "decision" and "verdict," which essentially differ. This is shown by the definition given by Bouvier in his "Law Dictonary" and Anderson in his "Dictionary of Law."

We then find that the judgment appealed from was rendered or pronounced in open court on the 14th of February, 1907; that Georgina Puigdollers filed her notice of appeal on the 15th of the following month of March, in the office of the secretary of the district court, and that Antonio Monroig filed his on the day following—that is to say, on the 16th of the said month of March.

Therefore, the period of 15 days provided for by the Code of Civil Procedure, within which an appeal may be taken from a judgment, and be reviewed by the appellate court on the ground that the judgment is contrary to the evidence, had more than expired.

The Code of Civil Procedure clearly and expressly provides that appeals must be taken within 15 days after the rendition of judgment, but even supposing that the said period commenced to run after the judgment was entered, we find that in this case judgment was entered on February 26, 1907, and the appeals were taken on the 15th and 16th of March following, so that even in such a case, the period of 15 days referred to had already expired, according to the rule for computing such periods established by section 388 of the Political Code, applied by this Supreme Court in its decision in the case of *Ortiz* v. *Molina,* 13 P. R. Rep., p. 388, decided December 23, 1907.

The situation of the appellants is aggravated if it is taken into account that the judgment was entered on February 26, 1907, as of the 15th of February, upon which date it should have been entered, neither of the parties having made any objection upon this point.

Both appeals having been taken after the expiration of the period of 15 days, counting from the date of the rendition of judgment, and even from the date on which it was entered, we cannot consider and decide the questions of law raised by the appellants in their respective briefs, even disregarding the fact that the appeal of the plaintiff Puigdollers should be dismissed.

All of the questions raised by Georgina Puigdollers in her brief are questions of fact, and of those raised by Antonio Monroig, Nos. 2, 3 and 4, must be similarly classified, as appears from the mere reading thereof, and to decide these matters it would be necessary to review the evidence taken at the trial relating thereto; those questions raised by Antonio Mon-

roig numbered 1, 5 and 6 must be recorded as questions of law, inasmuch as they refer to violations of certain provisions of the substantive and adjective law.

We may disregard the fifth question of law because as we shall not review the evidence constituted by the books of the firm of "A. Monroig é Hijos," there would be nothing gained by a consideration of the fact as to whether or not the trial court erred in ordering the said books to be presented in court after judgment had been rendered, in order that the plaintiff might prepare a statement of facts. That document is of no effect whatever in this appeal, for the simple reason that we shall not review the evidence and must accept the findings of the trial court thereon.

In regard to the first question of law in that the San Juan court erred in sustaining the motion of the plaintiff to annul the report of the arbitrators presented during the trial, we think that the decision of the said court of December 12, 1906, should be sustained.

The legal provisions, violations of which is alleged by counsel for Antonio Puigdollers (*sic*) in support of his contention, are not applicable to the case, since the trial court accepted the decision of the board of arbitration in respect to the facts submitted to it and simply annulled the reports thereof in respect to the deductions which it was without jurisdiction to make—that is to say, that of $6,000 as the proceeds from the milk dairy, $16,500 as the value of the 2,000 bags of sugar, and $40,900 as the value of the cane plantations—on November 6, 1904, the court reserving the right to decide these matters in due time.

As a matter of fact, the court merely ordered, on the motion of the plaintiff, as it could have done on its own motion, that the matter be submitted to arbitration, one of the arbitrators to be appointed by each of the parties and the third by the court, to report as to the products and profits of the "Central Juanita," the cattle raising and milk business car-

ried on during the period of time embraced between November 6, 1904, and November 5, 1905. No power was conferred upon the arbitrators to make deductions from the products and profits of the ''Central Juanita'' and the cattle and milk business, and if the scope and effect of the order were doubtful it must be construed in the sense, most favorable to the jurisdiction of the court, and not to that of the board of arbitration.

This being so, it was not necessary to revise the decision of the board of arbitration by holding a new trial in order to partially annul the same, as was done by the trial court, because the said court accepted the facts established by the arbitrators within the limits of their jurisdiction, and only annulled their action with respect to the deductions made, which was within the sole province of the court and subject to the exercise of its jurisdiction.

The error committed by the arbitrators appeared *prima facie* from the decision of the court upon the arbitration and from the decision of the arbitrators themselves, it not being necessary to ask for a new trial in order to annul the same, because no questions of fact were sought to be reviewed.

The question was one of law in regard to the jurisdiction of the arbitrators and the court decided the same, and in so doing did not exceed its jurisdiction, and reserved the right to decide in due time the questions relating to the deductions made from the products of the ''Central Juanita'' and the milk dairy operated in conjunction therewith, fixed by the arbitrators.

It would have been an entirely different matter if the court had changed the decision of the board of arbitration in respect to the amount of the products found by the board to have been obtained from the operation of the ''Central Juanita,'' the milk dairy and the cattle raising business.

We think we may cite in support of this doctrine the following decisions of the Supreme Court of California: *Mul-*

*drow* v. *Norris,* 2 Cal., 79; *Headly and Cozzens* v. *Reed,* 2 Cal., 325; *Muldrow* v. *Norris,* 12 Cal., 331.

The trial court, in rendering its judgment, properly disposes of the matters relating to the deductions made, and we must accept its decision upon these points for the reason above stated, that we cannot review the evidence because of the fact that the appeal was taken after the expiration of the period of 15 days, provided for by law.

In regard to the sixth and last question raised in his brief by counsel for Antonio Monroig Obrador, we are of the opinion that the trial court did not commit the error of law alleged.

We admit that it is an indisputable principle of law that in every partnership contract, whether civil or mercantile, until the date of its termination arrives it is impossible to determine, by liquidation, the profits corresponding to each of the partners, because it might very well happen that, upon the termination of the contract period no profits would result, but that even losses might appear.

We are aware that, in accordance with the provisions of section 1581 of the Civil Code, the existence of a partnership commences from the moment that the contract is signed, in the absence of an agreement to the contrary, and that it continues in existence for such time as may be agreed upon, in accordance with the provisions of section 1582, and one of the causes for the termination thereof, among others, is the expiration of the period for which it was constituted, as provided by section 1602, but these legal provisions have not been violated by the trial court in its judgment holding that the plaintiff should recover from the defendant a specified sum of money as ganancial profits accruing during the year that the conjugal partnership endured, because in so doing it has not ordered a dissolution of the firm of ''Antonio Monroig é Hijos,'' nor has it ordered a division of the profits among the parties constituting same, but has limited its action

to a determination of the amount to which the plaintiff, as the wife·of one of the partners thereof, was entitled as ganancial property.

Article 163 of the Civil Code provides that the bonds of matrimony may ·be dissolved by a decree of divorce legally obtained, and section 173 provides that ·the divorce carries with it the absolute and complete dissolution of the matrimonial bond and the separation or division of the properties of all kinds between the spouses; section 1330 provides that the ganancial partnership terminates upon the dissolution of the marriage, and section 1331 provides that, upon a dissolution of the partnership, an inventory shall be immediately taken, except in the cases provided for by said section, and section 1337 provides that the remaining ganancial property shall be divided equally between the husband and wife, or their respective heirs.

As will be seen, the marriage of Georgina Puigdollers and Antonio Monroig having been dissolved, the ganancial partnership was also terminated, and by virtue of the existence of said partnership each of the spouses has a right to one-half of the gains or net profits obtained during the existence of the marriage. So that the plaintiff has a right to one-half of the net profits or gains obtained by the defendant in the firm of ''Antonio Monroig é Hijos'' during the year of the existence of the marriage.

These profits or gains obtained during the period above mentioned may be immediately determined without waiting for the termination of the period for which the firm of ''Antonio Monroig é Hijos'' was constituted. There is no reason to state what that period is because the plaintiff cannot participate in the profits or losses of ''Antonio Monroig é Hijos'' except during the existence of the conjugal partnership. She cannot participate in the losses which might occur, either before or after the year of her marriage, in the business of the firm of ''Antonio Monroig é Hijos,'' nor can she participate in the profits obtained either before or after that time, and

to hold otherwise would be to destroy the ganancial partnership and disregard the principles governing the same. There is a further reason why Georgina Puigdollers cannot be required to await the termination of the period for which the firm of "Antonio Monroig é Hijos" was constituted, because, according to the provisions of section 1604 of the Revised Civil Code, the firm of "Antonio Monroig é Hijos" as constituted for a definite period of time, may be extended by the consent of the partners and, if extended prior to the termination thereof, it would not be substituted by the new partnership, but the original partnership would continue in existence, according to section 1605 of the said Code, and, in that case, Georgina Puigdollers would be obliged to await the expiration of the extended period before she could demand and obtain the liquidation of the ganancial property, and she would, therefore, be subject, in the exercise of her rights, to the wishes of the partners of the firm of "Antonio Monroig é Hijos."

Sections 1313 and 1610 of the Civil Code, cited by couns for Antonio Monroig, are not contrary to the doctrine hereinbefore announced.

True it is that section 1572 of the Revised Civil Code provides that civil partnerships, on account of the objects to which they are devoted, may adopt all the forms recognized by the Code of Commerce, and that in such a case its provisions shall be applicable in so far as they do not conflict with those of the Civil Code.

It is also true that, according to section 139 of the Code of Commerce, in a general or limited copartnership, no partner may withdraw or divert from the common fund an amount greater than that assigned to each for his personal expenses, and that, according to section 174, the creditors of a partner shall not have, with regard to the partnership, any right other than that of attaching and collecting the amounts which may be due the debtor partner by reason of profits or liquidation; but, as the judgment only ordered that the plaintiff ob-

tain from the defendant the sum of $5,785.95, with the costs, without requiring that amount to be withdrawn from the profits obtained by the defendant in the partnership of ''A. Monroig é Hijos,'' it cannot be successfully maintained that these legal provisions have been violated.

For the reasons set forth, the appeal taken by Georgina Puigdollers from the judgment rendered by the District Court of San Juan, on February 14, 1907, must be dismissed, and with regard to the appeal taken by Antonio Monroig Obrador from the said judgment the same must be affirmed, without special imposition of costs in the second instance.

*Affirmed.*

Chief Justice Quiñones and Justices Figueras, MacLeary and Wolf concurred.